UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

NICOLAS VALCIK,

      Plaintiff,

v.

TEXAS TECH UNIVERSITY, et al.,

      Defendants.

No. 5:24-CV-086-H

## ORDER

This case arises from the termination of Nicolas Valcik, a former high-ranking official at Texas Tech who alleges that he was fired in retaliation for blowing the whistle on the use of false data in reports to obtain federal funding. Valcik alleges that after he reported the presence of false data and insisted on correcting it, other high-ranking officials preferred to continue using the false data and fired him in retaliation for trying to prevent the submission of false claims to the federal government. Valcik brings claims under the False Claims Act (FCA) against Texas Tech, its Chief Financial Officer, and its Chief Data Officer, and against Texas Tech for discrimination under the Age Discrimination in Employment Act (ADEA) and the Texas Commission on Human Rights Act (TCHRA).

Texas Tech moved to dismiss the complaint (Dkt. No. 22) under Rule 12(b)(1) and (b)(6), as did the individual defendants (Dkt. No. 24). In addition, Valcik moved for leave to amend his complaint (Dkt. No. 31) to add additional allegations against the individual defendants. The Court grants Texas Tech's motion to dismiss under Rule 12(b)(1), grants Valcik's motion for leave to amend, denies the 12(b)(1) portion of the individual defendants' motion to dismiss, and denies as moot the 12(b)(6) portion of the individual defendants' motion to dismiss.

1.    **Factual and Procedural History**

   A.    **Factual Background**

The Court takes as true the allegations in the proposed third amended complaint, as it must at this procedural stage.  Nicolas Valcik was the Managing Director for the Office of Institutional Research at Texas Tech between September 2020 and April 2022.  Dkt. No. 31-1 at 3.  In that role, Valcik's responsibilities included providing data to university officials for use in reports to obtain state and federal funding and ensuring that the data used to secure those funds was not false or fraudulent.  *Id.*

Valcik discovered that the university had already submitted certain educational reports, called "IPEDS" reports, to the Department of Education that contained false information.  *Id.* at 4.  The Department of Education requires that the data used in federal reports to obtain funding be accurate, and the Department can fine or withhold funding from public universities if they use false data in IPEDS reports.  *Id.* at 7.  Valcik informed Noel Sloan, the Chief Financial Officer of Texas Tech, in an audit report and an executive memorandum that certain data used in the university's IPEDS report was wrong, and he also corrected the data errors.  *Id.* at 5–6.  Valcik sent emails to Sloan and others informing them "that without the fixes[,] the data would be non-compliant and would result in false federal filings."  *Id.* at 7.

In addition, Valcik told Brandon Hennington, the Chief Data Officer of Texas Tech, orally and in emails that additional data used for federal reporting to the Department of Education "was knowingly false."  *Id.* at 2, 7.  However, Hennington ignored the errors because they would result in more advantageous data being reported to the Department of Education.  *Id.* at 7.

At an April 2022 meeting with Sloan, Hennington, and an HR representative, Sloan terminated Valcik.  *Id.* at 8.  Sloan and Hennington were both aware that Valcik believed that there was false data used to compile IPEDS reports, that Valcik wanted to correct the false data to prevent false reports, and that, "despite instructions to the contrary by Hennington . . . Valcik made corrections to the database to comply with federal statutes and regulations."  *Id.*  However, Sloan and Hennington "would have rather filed false and unlawful requests for federal funds with false data than to embarrass themselves and the University President by correcting the data."  *Id.* at 5.  Thus, rather than correct the federal data, Valcik claims that Sloan terminated him in retaliation for correcting data and making internal reports regarding the presence of false data used for federal reporting.  *Id.* at 3–4, 7.

### B.    Procedural History

Valcik sued Texas Tech in April 2024.  Dkt. No. 1.  Texas Tech moved to dismiss for lack of subject-matter jurisdiction based on its invocation of sovereign immunity.  Dkt. No. 5.  In July 2024, the Court agreed to stay discovery pending resolution of the motion to dismiss.  Dkt. No. 9.

Also in July 2024, Valcik added Sloan and Hennington as defendants.  Dkt. No. 10.  Shortly thereafter, Valcik again amended his complaint with the consent of all defendants.  Dkt. No. 13.  Based on the filing of the second amended complaint, the Court denied Texas Tech's original motion to dismiss as moot.  Dkt. No. 16.

Texas Tech again moved to dismiss the second amended complaint for lack of subject-matter jurisdiction and failure to state a claim.  Dkt. No. 22.  Valcik responded (Dkt. No. 23) and Texas Tech replied (Dkt. No. 25).  Accordingly, Texas Tech's motion to dismiss is ripe for review.

– 3 –

In addition, Sloan and Hennington filed a separate motion to dismiss for both lack of subject-matter jurisdiction and failure to state a claim. Dkt. No. 24. Valcik did not respond in opposition to Sloan and Hennington's motion to dismiss. Instead, Valcik attempted to file a third amended complaint in response to Sloan and Hennington's motion to dismiss, which he believed was an amendment as of right. *See* Dkt. No. 26. However, Valcik erroneously filed the wrong document on the docket. *See id.*; *see also* Dkt. No. 29. The Court struck the erroneously filed document and instructed Valcik that if he wished to respond to Sloan and Hennington's motion to dismiss, he would need to move for leave to file an out-of-time response or for leave to amend his complaint. Dkt. No. 29. Later, Valcik moved for leave to file his third amended complaint. Dkt. No. 31. Sloan and Hennington responded (Dkt. No. 34) and Valcik replied (Dkt. No. 38). Accordingly, Sloan and Hennington's motion to dismiss (Dkt. No. 24) and Valcik's motion for leave to amend (Dkt. No. 31) are ripe for review.

## 2. Legal Standards

### A. Motion to dismiss under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the subject-matter jurisdiction of the district court to hear a case. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (citation omitted). "[T]he plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Lack of subject-matter jurisdiction may only be found by considering: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the

record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *King v. U.S. Dep't of Veteran Affs.*, 728 F.3d 410, 413 (5th Cir. 2013). Therefore, "[i]n considering a challenge to subject matter jurisdiction, the district court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (internal quotations omitted). Any action barred by the doctrine of sovereign immunity must be dismissed for lack of subject-matter jurisdiction. *See Freeman v. United States*, 556 F.3d 326, 334–35 (5th Cir. 2009).

### B. Motion for leave to amend the complaint

When the district court has not entered a scheduling order governing the amendment of pleadings, Federal Rule of Civil Procedure 15 will govern the district court's decision to grant or deny leave. *See S&W Enters., LLC v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535–36 (5th Cir. 2003). Under Rule 15, leave to amend should be freely given. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In deciding whether to grant leave under Rule 15(a), district courts consider the following five factors: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (quoting *Foman*, 371 U.S. at 182).

### 3. Analysis

Valcik has three claims pending against Texas Tech: a retaliation claim under Section 3730(h) of the FCA, a federal discrimination claim under the ADEA, and a

state-law discrimination claim under the TCHRA. *See* Dkt. Nos. 13 at 16–19; 31-1 at 23–26.

Texas Tech moved to dismiss the plaintiff's FCA claim with prejudice under Rule 12(b)(6)

because a state cannot be sued under Section 3730(h) of the FCA. *See* Dkt. No. 22 at 9–12.

Texas Tech additionally moves to dismiss all claims against it with prejudice under Rule

12(b)(1) because its sovereign immunity bars each of the plaintiff's claims against it. *See id.*

at 12–16. The plaintiff, in his response, agrees that his claims against Texas Tech are barred

by sovereign immunity but argues that his claims should be dismissed without prejudice.

Dkt. No. 23. The Court dismisses without prejudice under Rule 12(b)(1) the plaintiff's

claims against Texas Tech.

 In addition, Valcik has brought a claim under the FCA retaliation provision against

Sloan and Hennington, claiming that he was wrongfully terminated and seeking

reinstatement. Dkt. Nos. 13 at 17–18; 31-1 at 24–25. Sloan and Hennington moved to

dismiss the claim as pled in the second amended complaint under 12(b)(1) and (b)(6),

arguing that they are not subject to suit under the FCA, that Valcik fails to satisfy the *Ex*

*parte Young* exception to Eleventh Amendment immunity even if they are subject to suit, and

that Valcik failed to adequately allege the elements of an FCA retaliation claim. *See*

*generally* Dkt. No. 24. After Sloan and Hennington moved to dismiss, Valcik moved for

leave to file a third amended complaint. Dkt. No. 31. Sloan and Hennington argue that the

Court should not grant the motion for leave to amend, including on the basis that the

proposed third amended complaint is futile because the amendments still fail to satisfy the

requirements of *Ex parte Young*. *See generally* Dkt. No. 34. The Court determines that Valcik

has satisfied the *Ex parte Young* exception, grants the motion for leave to amend, denies the

12(b)(1) portion of the individual defendants' motion to dismiss, and denies as moot the 12(b)(6) portion of that motion.

### A.    The Court dismisses without prejudice all claims against Texas Tech.

When sovereign immunity bars a claim, a court lacks subject-matter jurisdiction, and dismissal under Rule 12(b)(1) is appropriate. *See Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469–70 (5th Cir. 2016); *see also Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir. 1996) ("Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice."). Here, Eleventh Amendment immunity bars each claim against Texas Tech, so the Court dismisses all claims against it without prejudice.

### i.    The Court dismisses the FCA claim against Texas Tech without prejudice under Rule 12(b)(1).

Texas Tech moves to dismiss the retaliation claim under Section 3730(h) of the FCA for failure to state a claim because Section 3730(h) does not authorize suit against states or arms of the state. *See* Dkt. No. 22 at 9–12. In the alternative, Texas Tech moves to dismiss the FCA claim for lack of subject-matter jurisdiction. *Id.* at 12–15. The Court dismisses the FCA claim without prejudice under Rule 12(b)(1).

The Supreme Court has held that, in some circumstances, it is "possible, and indeed appropriate, to decide [first] the statutory issue" of whether a statute permits a cause of action to be brought against a state before turning to the Eleventh Amendment jurisdictional issue. *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 779–80 (2000). In *Stevens*, the Supreme Court held that the qui tam provision of the FCA does not permit a qui tam plaintiff to sue the state or an arm of the state. *Id.* at 787–88. There, the Supreme Court noted that a statute permits suit against a state "only by clearly expressing such an

intent." *Id.* at 779. As the statutory language of the FCA's qui tam provision lacked any indication that a "person" subject to liability under that provision included states, the Supreme Court concluded that while "a private individual has standing to bring suit in federal court on behalf of the United States under the False Claims Act . . . the False Claims Act does not subject a State (or state agency) to liability in such actions." *Id.* at 787–88.

Texas Tech urges that the FCA retaliation claim fails to state a claim for the same reason as the qui tam claim at issue in *Stevens*—specifically, that Section 3730(h) simply does not subject states or arms of the state to suit. Dkt. No. 22 at 9–12. However, the Fifth Circuit has already considered *Stevens*'s application to FCA retaliation claims and determined that, for that provision of the FCA, it is more appropriate to consider the Eleventh Amendment issue first rather than the statutory issue. *United States ex rel. King v. Univ. of Tex. Health Sci. Ctr.-Hous.*, 544 F. App'x 490, 499 (5th Cir. 2013). As a result, the Court considers the jurisdictional issue first rather than Texas Tech's statutory argument as to why Valcik fails to state a claim.

The Fifth Circuit has already held that claims against states or arms of the state under the FCA retaliation provision, Section 3730(h), are barred by Eleventh Amendment immunity. *United States v. Tex. Tech Univ.*, 171 F.3d 279, 295 (5th Cir. 1999). Texas Tech is an arm of the state of Texas. *See Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 n.3 (5th Cir. 1996); *Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 257 (5th Cir. 2020); *see also* Tex. Educ. Code § 61.003(3). And the plaintiff agrees that his FCA claim against Texas Tech should be dismissed without prejudice for lack of subject-matter jurisdiction. *See* Dkt. No. 23 at 3 ("Plaintiff must admit that . . . this claim must be dismissed . . . without prejudice.").

Accordingly, the Court dismisses the plaintiff's Section 3730(h) retaliation claim against Texas Tech under Rule 12(b)(1) without prejudice.

> ii.    **The Court dismisses the ADEA and state-law discrimination claims against Texas Tech without prejudice under Rule 12(b)(1).**

Texas Tech moves to dismiss the ADEA and state-law discrimination claims against it on the sole basis that, because Texas's sovereign immunity bars the claims, the Court lacks subject-matter jurisdiction over the claims. *See* Dkt. No. 22 at 15–16.

As to the ADEA claim, Texas state universities are protected by Texas's sovereign immunity, and "neither Congress nor Texas have waived Texas's sovereign immunity from ADEA claims." *Chhim*, 836 F.3d at 469–70 (citing *Sullivan v. Univ. of Tex. Health Sci. Ctr. at Hous. Dental Branch*, 217 F. App'x 391, 395 (5th Cir. 2007)). The plaintiff, again, agrees that this claim must be dismissed without prejudice for lack of subject-matter jurisdiction. Dkt. No. 23 at 3; *see also id.* at 4 ("Plaintiff understands that this Court has no basis to do anything aside from dismiss Texas Tech University from this matter without prejudice."). Accordingly, the Court dismisses the ADEA claim under Rule 12(b)(1) without prejudice.

As to the state-law discrimination claim brought under the TCHRA, Texas "has waived its sovereign immunity in state courts for TCHRA violations." *Hernandez v. Tex. Dep't of Human Servs.*, 91 F. App'x 934, 935 (5th Cir. 2004). However, the waiver of immunity in state court does not necessarily waive that immunity in federal court. *Id.* And the Fifth Circuit has "clearly held that the TCHRA does not waive Texas'[s] Eleventh Amendment immunity" in federal court. *Id.* (citing *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 (2002)); *see also Perez*, 307 F.3d at 332 ("[T]he cited section [of the TCHRA] does not expressly waive sovereign immunity in *federal* court.") (emphasis in original). The

plaintiff again agrees that dismissal of this claim is warranted.  Dkt. No. 23 at 4.  The Court

thus also dismisses the state-law discrimination claim under Rule 12(b)(1) without prejudice.

### B.    The Court grants the motion for leave to amend.

The Court considers five factors in determining whether to grant leave to

amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated

failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party by virtue of the allowance of the amendment, [and] futility of the

amendment." *Rosenzweig*, 332 F.3d at 864 (5th Cir. 2003).  Applying these factors here, the

Court grants Valcik leave to amend his complaint.[1]

First, Valcik's amendments are delayed, but they are not unduly delayed.  The Fifth

Circuit has cautioned that while leave to amend "should be freely given, amendments

should be tendered no later than the time of pretrial, unless compelling reasons why this

could not have been done are presented." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir.

2004).  Neither Rule 15 nor the Fifth Circuit impose any particular time limit for permissive

amendments.  *See id.*  Here, Valcik initially filed suit in April 2024 and added Sloan and

Hennington as defendants in his first amended complaint filed in July 2024.  *See* Dkt. Nos.

1; 10.  Valcik attempted to file his proposed third amended complaint in November 2024 in

response to Sloan and Hennington's motion to dismiss.  *See* Dkt. No. 26.  After that was

stricken on procedural grounds, Valcik moved for leave to file his third amended complaint

in December 2024.  Dkt. No. 31.  Thus, approximately eight months passed since Valcik's

---

[1] Although Valcik previously argued that he was entitled to file the third amended complaint as of
right because it was his first time amending the allegations related to Sloan and Hennington, Valcik
now concedes that he requires leave to amend under Federal Rule of Civil Procedure 15.  Dkt. No.
38 at 1 n.1; *see also* Dkt. No. 31 at 5.

original complaint and the instant motion for leave.  During that period, no scheduling order has been entered, and discovery has been stayed as a result of the defendants' invocation of Eleventh Amendment immunity.  *See* Dkt. No. 9.  The instant amendments are thus tendered well in advance of the pretrial stage.  *See Smith*, 393 F.3d at 595. Although Valcik sought leave to file the third amended complaint quite a few months after the original complaint, the Court determines that the delay is not so severe as to be "procedurally fatal."  *Id.* (citation omitted).

        Second, there is no suggestion of bad faith or dilatory motive on the part of Valcik. The individual defendants do not make any argument that Valcik filed his motion for leave based on bad faith or a motivation to delay the proceedings.  Moreover, as Valcik notes in his reply brief, he seeks to amend his complaint in response to the arguments raised in the individual defendants' motion to dismiss.  Dkt. No. 38 at 4.  This factor also does not support denying leave to amend.

        Third, while Valcik seeks to file his third amended complaint and thus has had two prior opportunities to cure deficiencies, Valcik has not repeatedly failed to cure deficiencies that have been identified either by the Court or by the individual defendants.  *See, e.g.*, *Neutron Depot, LLC v. Bankrate, Inc.*, 798 F. App'x 803, 808 (5th Cir. 2020) (noting that denial of leave to amend was appropriate where a pleading deficiency addressed in the proposed fourth amended complaint had been identified three years prior).  The Court has not yet ruled on any motion to dismiss in this case yet, as Texas Tech's original motion to dismiss (Dkt. No. 5) was mooted by the filing of an amended complaint (*see* Dkt. No. 16). In addition, Sloan and Hennington's motion to dismiss the second amended complaint (Dkt. No. 24) is their only motion to dismiss filed in the case.  Having been presented with

the individual defendants' arguments as to why he fails to state a claim, Valcik now seeks to amend his complaint to respond to those arguments.

Fourth, the individual defendants will not be unduly prejudiced by allowing the amendment. "A defendant is prejudiced if an added claim would require the defendant 'to reopen discovery and prepare a defense for a claim different from the [one] . . . that was before the court." *Smith*, 393 F.3d at 596 (quoting *Duggins v. Steak 'N Shake, Inc.,* 195 F.3d 828, 834 (6th Cir. 1999)). Here, discovery has been stayed since the beginning of the case in light of the defendants' sovereign-immunity defense. *See* Dkt. No. 9. And Valcik's amendments add factual allegations rather than new claims. *See generally* Dkt. No. 38-1. Moreover, Sloan and Hennington will have the opportunity to file a motion to dismiss in response to the third amended complaint if they believe that they have meritorious defenses to the FCA claim as amended.

Finally, the amendments are not futile. In their response to the motion to amend, Sloan and Hennington assert only one ground for the futility of the third amended complaint: that Valcik's amendments are futile because the request for reinstatement based on allegedly unlawful termination does not satisfy the *Ex parte Young* exception, and they are therefore immune from suit. Dkt. No. 34 at 13–15. As explained below, because Fifth Circuit caselaw directly refutes Sloan and Hennington's arguments that Valcik has failed to bring a claim for prospective relief from an ongoing violation of federal law, this argument fails. *See infra* Analysis § 3.C.

### C.    Valcik can bring a retaliation claim against the individual defendants under *Ex parte Young*.

Sloan and Hennington make two arguments regarding why Valcik cannot bring against them an FCA retaliation claim under *Ex parte Young*. First, they argue, if the FCA

does not permit suit against a state, it also does not permit Valcik to bring suit against Sloan and Hennington in their official capacities under an *Ex parte Young* theory, given that an official-capacity suit is equivalent to a suit against the state. Second, they argue that even if the FCA permits such a suit, Valcik's claim does not satisfy the *Ex parte Young* exception to Eleventh Amendment immunity. The Court determines that both arguments fail.

### i.    Valcik may sue Sloan and Hennington under the FCA.

Sloan and Hennington first argue that because the FCA does not permit claims against states, it also should not permit claims against official-capacity defendants because an official-capacity claim is the same as a claim against a state. Dkt. No. 24 at 14; *see also McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011) ("Eleventh Amendment immunity extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself."). In making this argument, the individual defendants rely on *Elizondo v. University of Texas at San Antonio*, No. CIVASA-04-CA-1025-XR, 2005 WL 823353 (W.D. Tex. Apr. 7, 2005). *See* Dkt. No. 24 at 14. In *Elizondo*, the district court concluded that the statutory language of Section 3730(h) does not permit suits against states, and that because suits against states and suits against official-capacity defendants are equivalent, the claim against the official-capacity defendant failed as well. 2005 WL 823353, at *6.

*Elizondo*, however, did not analyze the application of *Ex parte Young* when considering an official-capacity claim. *See id.* Under *Ex parte Young*, when state officials are sued in their official capacity for prospective injunctive relief based on an ongoing violation of federal law, those actions "are not treated as actions against the State." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *see also Ex parte Young*, 209 U.S. 123, 159–160

(1908).  *Ex parte Young* thus undermines the reasoning that official-capacity claims must be barred when suits against a state are barred because official-capacity claims are merely claims against the state.

For example, in the context of 42 U.S.C. § 1983, the Supreme Court has held that states and state officials acting in their official capacities are not "persons" within the meaning of Section 1983 and therefore cannot be sued under Section 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  However, the Supreme Court also recognized that "[o]f course a state official in his or her official capacity, when sued for injunctive relief" under *Ex parte Young* "would be a person under [Section] 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id.* at 71 n.10 (quoting *Graham*, 473 U.S. at 167 n.14).

The same logic from *Will* applies here.  Even if a state is not a possible defendant for a Section 3730(h) retaliation claim, actions against official-capacity defendants brought for prospective relief under *Ex parte Young* are not treated against actions against a state.  *See id.* As a result, Valcik's *Ex parte Young* claim against Sloan and Hennington is not barred on the basis that Section 3730(h) does not permit suit against states or state officials acting in their official capacities.  Valcik seeks prospective relief—reinstatement—against official-capacity defendants based on an alleged ongoing violation of federal law.

## ii.    The plaintiff's claim satisfies *Ex parte Young*.

Sloan and Hennington next argue that *Ex parte Young* does not apply here because the violation of federal law alleged is not ongoing.  Dkt. No. 24 at 16–19.  The *Ex parte Young* exception to sovereign immunity requires that the plaintiff bring a claim for "prospective, injunctive relief from a state actor" that is "based on an alleged ongoing violation" of federal

– 14 –

law.  *NiGen Biotech, LLC v. Paxton*, 804 F.3d 389 (5th Cir. 2015) (citation omitted); *see also Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 324 (5th Cir. 2008) (explaining that *Ex parte Young* applies to both alleged federal constitutional and statutory violations).  Sloan and Hennington argue that in the context of employment law, "termination is a discrete act and not evidence of a continuing violation."  Dkt. No. 24 at 19.  They then argue that the same logic should apply in the context of *Ex parte Young*, such that alleging wrongful termination is a "discrete, one-time event" and not an ongoing violation of federal law.  *Id.*

The Fifth Circuit has already considered and expressly rejected this argument in the context of *Ex parte Young* claims under the FMLA.  *See Nelson*, 535 F.3d at 324.  In *Nelson*, the plaintiff sued the administrative head of a state university in his official capacity, arguing that the official violated the FMLA and seeking reinstatement to the plaintiff's former position.  *Id.* at 319–20.  After the district court dismissed the claim for failure to allege a continuing violation, the Fifth Circuit reversed.  *Id.* at 324.  The Fifth Circuit first acknowledged that in employment law, termination is a discrete act and not a continuing violation.  *Id.* at 323.  However, the Fifth Circuit noted that both its prior precedent in *Warnock v. Pecos County*, 88 F.3d 341 (5th Cir. 1996), and other Circuits have held that termination and a request for reinstatement satisfies the continuing-violation requirement of *Ex parte Young*.  *Id.* at 322–23.

Therefore, although the Fifth Circuit "recognize[d] that [*Nelson*] treats terminations as ongoing violations of law with respect to *Ex parte Young* but not with respect to employment discrimination," it held that "a request for reinstatement is sufficient to bring a case within the *Ex parte Young* exception to Eleventh Amendment immunity, as it is a claim for prospective relief designed to end a continuing violation of federal law."  *Id.* at 324 &

n.5.  Sloan and Hennington assert that there is no case holding that a request for reinstatement satisfies *Ex parte Young* specifically for claims under the FCA.  *See* Dkt. No. 24 at 14.  But nothing in *Nelson* suggests that its holding is limited solely to terminations in violation of the FMLA—and indeed, the *Nelson* court noted that a request for reinstatement satisfies *Ex parte Young* when brought to remedy the violation of "statutory rights *like* [those provided by] the FMLA."  *Nelson*, 535 F.3d at 324 (emphasis added).

The Court thus concludes that Valcik is permitted to state a claim against Sloan and Hennington in their official capacities under the *Ex parte Young* exception to sovereign immunity.

\*          \*          \*

Because Valcik's FCA claim against Sloan and Hennington is permitted under the *Ex parte Young* exception to sovereign immunity, the Court denies the 12(b)(1) portion of Sloan and Hennington's motion to dismiss (Dkt. No. 24).  As to the 12(b)(6) portion of that motion, because the Court permits Valcik to file his third amended complaint—which adds new factual allegations to support the claim against Sloan and Hennington—the Court denies as moot the 12(b)(6) portion in light of the new complaint.

## 4.    Conclusion

The Court grants Texas Tech's amended motion to dismiss (Dkt. No. 22) and dismisses without prejudice for lack of subject-matter jurisdiction all claims against Texas Tech.  In addition, the Court grants Valcik's motion for leave to amend his complaint (Dkt. No. 31), denies the 12(b)(1) portion and denies as moot the 12(b)(6) portion of Sloan and Hennington's motion to dismiss (Dkt. No. 24).  The Clerk of Court is directed to file

Valcik's third amended complaint (Dkt. No. 31-1) and its appendix (Dkt. No. 38-2) as a separate docket entry.

So ordered on July 21, 2025.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE