UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

NICOLAS VALCIK,

     Plaintiff,

v.

     No. 5:24-CV-086-H

NOEL SLOAN, et al.,

     Defendants.

## <u>ORDER</u>

This case arises from the termination of Nicolas Valcik, a former high-ranking official at Texas Tech University who alleges that he was fired in retaliation for blowing the whistle on the use of false data in reports to obtain federal funding.  The Court previously dismissed Texas Tech from the suit.  Dkt. No 39.  Valcik's sole remaining claim alleges that Texas Tech's Chief Financial Officer Noel Sloan and Chief Data Officer Brandon Hennington violated the False Claims Act (FCA) by terminating Valcik's employment in retaliation for his protected whistleblower reports.  *See* Dkt. No. 40.

Before the Court is the defendants' motion to dismiss the FCA retaliation claim. Dkt. No. 45.  The Court grants the defendants' motion.  First, the Court concludes that the plaintiff need only meet Rule 8's notice pleading standard—and not the Rule 9(b)'s heightened pleading standard—when pleading his FCA retaliation claim.  Even so, the Court concludes that the plaintiff has failed to sufficiently plead that he engaged in a protected activity within the meaning of the FCA.

## 1.    Factual and Procedural Background

### A.    Factual Background[1]

Nicolas Valcik was the Managing Director for the Office of Institutional Research at Texas Tech between September 2020 and April 2022.  Dkt. No. 40 ¶ 6.  In that role, Valcik's responsibilities included providing data to Texas Tech officials for use in reports necessary to obtain state and federal funding and ensuring that the data used to secure those funds was not false or fraudulent.  *Id.* ¶ 7.  During his employment, Valcik discovered that Texas Tech had submitted certain educational reports, called IPEDS[2] reports, to the Department of Education that contained false information.  *Id.* ¶ 8.  The Department can fine or withhold eligibility for Title IV funding from public universities if they use false data in IPEDS reports.  *Id.* ¶¶ 22, 38.

Valcik informed Texas Tech's CFO Noel Sloan that certain data used in the university's IPEDS report was wrong, and he also corrected the data errors.  *Id.* ¶¶ 17–23.  Valcik sent emails to Sloan and others informing them "that[,] without the fixes[,] the data would be non-compliant and would result in false federal filings."  *Id.* ¶ 23.  In addition, Valcik told CDO Brandon Hennington orally and in emails that additional data used for federal reporting to the Department of Education "was knowingly false."  *Id.* ¶ 24.  However, Hennington allegedly ignored the errors because "the false data was better for the University."  *Id.*

---

[1] The factual allegations are taken from the plaintiff's third amended complaint (Dkt. No. 40), which the Court accepts as true when resolving a motion to dismiss.  *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).

[2] The Integrated Postsecondary Education Data System (IPEDS) reports are a "system of interrelated surveys conducted annually by the U.S. Department of Education's National Center for Education Statistics (NCES)."  National Center for Education Statistics, *What is IPEDS?*, https://perma.cc/3JBL-VVSD.

At an April 2022 meeting with Sloan, Hennington, and an HR representative, Sloan terminated Valcik's employment.  *Id.* ¶ 27.  Sloan and Hennington were both aware that Valcik believed that there was false data used to compile IPEDS reports, that Valcik wanted to correct the false data to prevent false reports, and that, "despite instructions to the contrary by Hennington . . . Valcik made corrections to the database to comply with federal statutes and regulations."  *Id.* ¶ 28.  However, Valcik alleges that Sloan and Hennington "would have rather filed false and unlawful requests for federal funds with false data than to embarrass themselves and the University President by correcting the data."  *Id.* ¶ 15.  Thus, Valcik claims that Sloan terminated his employment in retaliation for correcting data and making internal reports regarding the presence of false data used for federal reporting.  *Id.* ¶¶ 10–12, 23.  Additionally, he claims that Hennington retaliated against him by threatening to move his office off campus.  *Id.* ¶ 26.

**B.    Procedural History**

Valcik sued Texas Tech in April 2024.  Dkt. No. 1.  In July 2024, Valcik added Sloan and Hennington as defendants.  Dkt. No. 10.  After amending his original complaint, Texas Tech moved to dismiss the claims against it for lack of subject-matter jurisdiction and failure to state a claim.  Dkt. No. 22.  Sloan and Hennington separately moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim.  Dkt. No. 24.  In an order dated July 21, 2025, the Court granted Texas Tech's 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction but denied Sloan and Hennington's 12(b)(1) motion to dismiss.  Dkt. No. 39 at 7–10, 12–16.  Additionally, the Court granted Valcik's motion for leave to amend to file his third amended complaint and denied as moot Sloan and Hennington's 12(b)(6) motion to dismiss the second amended complaint.  *Id.*  Now before the Court is

Sloan and Hennington's 12(b)(6) motion to dismiss the plaintiff's FCA claim in his third amended complaint.[3]   Dkt. No. 45.   The motion is fully briefed and ripe for review.   Dkt. Nos. 50; 53.

## 2.   Legal Standards

### A.   Rule 12(b)(6) Motion to Dismiss

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'"   *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   In other words, the plaintiff must plead facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."   *Id.* (quoting *Twombly*, 550 U.S. at 556).   If a complaint pleads facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"   *Id.* (quoting *Twombly*, 550 U.S. at 557).

In resolving a motion to dismiss, a court must "accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff."   *Richardson v. Axion Logistics, LLC*, 780 F.3d 304, 304–05 (5th Cir. 2015) (citation modified) (quoting *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010)).   But a court should not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."   *Gentilello v. Rege*, 627

---

[3] Alternatively, the defendants reurge their request to dismiss the claims for lack of subject-matter jurisdiction without additional arguments or briefing.   Dkt. No. 45 at 28.   For the reasons stated in its prior Order, the Court denies the defendants' request.   *See* Dkt. No. 39 at 12–16.

– 4 –

F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" for purposes of stating a plausible claim to relief. *Iqbal*, 556 U.S. at 678.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### B.    Rule 15 Motion for Leave to Amend

Federal Rule of Civil Procedure 15(a)(1) allows a party to amend a pleading "once as a matter of course" within 21 days of serving the pleading or receiving the opposing party's responsive pleading or motion.  Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  When evaluating whether to allow leave to amend under Rule 15, "[t]he court should freely give leave when justice so requires." *Id.*  The Rule 15 standard favors granting leave to amend, and a district court must have a "substantial reason" for denying leave. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005)).  In deciding whether to allow amendment of the complaint, a district court may consider factors such as "undue delay, [the movant's] bad faith or dilatory motive . . . , repeated failures to cure deficiencies by amendments . . . , undue prejudice to the opposing party . . . , and futility of the amendment." *Id.* (quoting *Jones*, 427 F.3d at 994).

### 3.    Analysis

The Court grants the defendants' motion to dismiss the plaintiff's FCA retaliation claim.  First, Valcik failed to plead that he complained about fraud on the government

within the meaning of the FCA and, thus, failed to plead that he engaged in a protected activity. Additionally, because the plaintiff has twice amended his FCA claim without success and provides no proposed amendments in support of his general request for leave to amend if the Court chooses to grant the defendants' motion to dismiss, the Court denies the plaintiff's request to file a fourth amended complaint and dismisses his FCA claim with prejudice.

### A.      Motion to Dismiss

The defendants first assert that the plaintiff has not met the Rule 9(b) heightened-pleading standard of Rule 9(b) when asserting his FCA retaliation claim. Alternatively, the defendants argue that the plaintiff has failed to sufficiently plead all elements of his claim.

### i.      The Court first concludes that the Rule 9(b) heightened pleading standard does not apply to FCA retaliation claims.

"The FCA is the Government's 'primary litigation tool' for recovering losses resulting from fraud." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 267 (5th Cir. 2010) (quoting *United States ex rel. Marcy v. Rowan Cos.*, 520 F.3d 384, 388 (5th Cir. 2008)). The FCA prohibits, among other things, presentment of false claims or false information in support of a false claim to the government. *See* 31 U.S.C. § 3729(a); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 183 (5th Cir. 2009). And any claim alleging such a fraud must meet the particularity requirements of Rule 9(b), which requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Grubbs*, 565 F.3d at 185.

The FCA also permits an individual to sue for retaliation if he "is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in

the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C § 3730. The parties dispute whether, in the Fifth Circuit, such a retaliation claim is subject to Rule 9's heightened-particularity standard or Rule 8's less-stringent "short and plain statement" pleading standard. *See* Fed. R. Civ. P. 8(a).

To be sure, the Fifth Circuit has stated generally that "a complaint filed under the False Claims Act must meet the heightened pleading standard of Rule 9(b)." *Grubbs*, 565 F.3d at 185. However, the Fifth Circuit did so when evaluating only claims seeking to hold a party liable for fraudulent conduct—namely, presenting a false claim for payment to the government—and therefore imposed Rule 9's standard to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Grubbs*, 565 F.3d at 188–195 (evaluating only claims for violation of § 3729(a)(1)–(3) (false claims) and not § 3730(h) (retaliation)). The Fifth Circuit has yet to expressly state whether Rule 9 applies to FCA whistleblower claims.

By its plain language, Section 3729 holds liable individuals who present or conspire to present "a false or fraudulent claim" for payment to the government. § 3729(a)(1). The retaliation provision of the FCA, however, does not require the plaintiff to prove that actual fraud occurred, but only requires that the plaintiff engaged in "lawful acts" that were "in furtherance of" an FCA action or in an effort to prevent violation of the FCA. *See* § 3730(h)(1); *cf. Thomas v. ITT Educ. Servs., Inc.*, 517 F. App'x 259, 262 (5th Cir. 2013) (*Thomas II*) (noting that the FCA retaliation provision does not require a plaintiff to prove fraud). On this basis, "[a]ll federal circuit courts of appeal that have faced this issue have reached the conclusion that 31 U.S.C. § 3730(h) claims need only 'meet the Rule

8(a) [. . .] standard.'" *Thomas v. ITT Educ. Servs., Inc.*, No. CIV.A. 11-544, 2011 WL 3490081, at *3 (E.D. La. Aug. 10, 2011) (*Thomas I*) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008) (collecting cases).[4]  And other district courts in the Fifth Circuit evaluating this issue have reached the same conclusion.[5]  Additionally, in addressing a similar inquiry—whether Rule 9(b)'s heightened standard applies to a retaliation claim under the Sarbanes–Oxley Act of 2002, 18 U.S.C. § 1514A—the Fifth Circuit declined to apply such a standard because "[t]here is no reason to think that the information necessary for an employee to form a reasonable belief of fraud is the same information a complaint must include to survive Rule 9(b)."  *Wallace v. Tesoro Corp.*, 796 F.3d 468, 480 (5th Cir. 2015).

An FCA whistleblower claim requires a plaintiff prove retaliation against an employee who took steps to stop presentment of a false claim to the government, but it does not require proof of the false claim itself.  Accordingly, the Court finds the reasoning of its sister courts and other circuit courts persuasive and concludes that the plaintiff need only meet Rule 8's notice-pleading standard when stating his FCA whistleblower claim.

---

[4] *Id.* (first citing *United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1305 (11th Cir. 2010); then citing *United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724 (4th Cir. 2010); then citing *United States ex rel. Elms v. Accenture LLP*, 341 Fed. App'x 869, 873 (4th Cir. 2009); then citing *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 729 (10th Cir. 2006), *abrogated on other grounds by Conchise Consultancy, Inc. v. United States ex rel. Hunt,* 587 U.S. 262 (2019); then citing *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 238 n.23 (1st Cir. 2004), *abrogated on other grounds by Allison Engine Co., Inc. v. United States ex rel. Sanders,* 553 U.S. 662 (2008)).

[5] *See, e.g., United States ex rel. McClinton v. Southerncare, Inc.*, No. 3:16-CV-128, 2021 WL 2587162, at *4 (S.D. Miss. June 23, 2021); *Paige v. AM Hospice, Inc.*, No. 3:19 CV-319, 2020 WL 2543301, at *2 (W.D. Tex. May 15, 2020), *R&R adopted*, 2020 WL 7974006 (W.D. Tex. June 23, 2020); *Guerrero v. Total Renal Care, Inc.*, No. EP-11-CV-449-KC, 2012 WL 899228, at *3 (W.D. Tex. Mar. 12, 2012); *Thomas II*, 2011 WL 3490081, at *3.

###### ii. The Court concludes that the plaintiff fails to sufficiently plead that he was engaged in a protected activity within the meaning of the FCA.

The Court must next determine whether the plaintiff has sufficiently pled that he was discharged for his "efforts to stop 1 or more violations of [the FCA]." 31 U.S.C § 3730. To establish an FCA retaliation claim, the plaintiff "must show (1) that [he] was engaged in protected activity with respect to the [FCA]; (2) that [his] employer knew [he] was engaged in protected activity; and (3) that [he] was discharged because [he] was engaged in protected activity. *Thomas II*, 517 F. App'x at 262 (citing *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994)). The defendants argue that the plaintiff has failed to sufficiently plead each element of his claim. With respect to the first element, the Court concludes that the plaintiff fails to plead facts that show he engaged in a protected activity within the meaning of the FCA and grants the defendants' motion.

Even after several amendments, the focus of the FCA "remains on those who present or directly induce the submission of false or fraudulent claims" for payment to the government. *Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176, 182 (2016). "The FCA is a fraud prevention statute, and 'not a general enforcement device for federal statutes, regulations[,] and contracts.'" *United States ex rel. Patton v. Shaw Servs., LLC*, 418 F. App'x 366, 369 (5th Cir. 2011) (quoting *Steury*, 625 F.3d at 268 (internal quotation marks omitted)). For a claim alleging an employer's or supervisor's retaliation for an employee's lawful action to stop such fraud, the employee's action must be "one motivated by a concern regarding fraud against the government" to qualify as a protected activity under the FCA. *Thomas II*, 517 F. App'x at 262 (citing *Riddle v. Dyncorp Int'l, Inc.*, 666 F.3d 940, 941 (5th Cir. 2012)).

– 9 –

"The Fifth Circuit recognizes internal complaints that 'concern false or fraudulent claims for payment submitted to the government' as protected activity under the Act, but requires that the complaints raise concerns about fraud." *United States ex rel. George v. Bos. Sci. Corp.*, 864 F. Supp. 2d 597, 605 (S.D. Tex. 2012) (citing *Patton*, 418 F. App'x at 372). In *Patton*, an unpublished Fifth Circuit opinion, the court found that the plaintiff had not engaged in a protected activity because, despite the employer's receipt of government funds for the construction project at issue, "the substance of [the employee's] complaints concerned [the employer's] allegedly unsafe or improper construction methods, and not that [the employee] was concerned that [the employer] was defrauding the government." *Patton*, 418 F. App'x at 372. In another unpublished Fifth Circuit decision, the court concluded that the plaintiff—who found internal noncompliance that may have resulted in falsely billing the government up to $200 million—did not engage in a protected activity because "he [did] not allege that he informed his supervisors that he was concerned about fraud." *Sealed Appellant I v. Sealed Appellee I*, 156 F. App'x 630, 634–35 (5th Cir. 2005). And a court in the Eastern District of Texas recently concluded that an employee's reports of multiple internal violations of the Health Insurance Portability and Accountability Act (HIPAA) and Food and Drug Administration (FDA) regulations did not equate to a protected activity for an FCA retaliation claim. *United States ex rel. Jackson v. Ventavia Rsch. Grp., LLC*, 667 F. Supp. 3d 332, 367 (E.D. Tex. 2023) (explaining that "internal complaints about patient safety, or protocol and regulatory violations, are not the same thing as complaining about defrauding the Government").

Other Texas district courts have held that, to qualify as a protected activity under the FCA, an employee must complain about an employer's fraudulent request for federal funds.

*See Guerrero v. Total Renal Care, Inc.*, No. EP-11-CV-449, 2012 WL 899228, at *5 (W.D. Tex. Mar. 12, 2012)  (concluding that "in order to constitute protected conduct, an employee's internal report must specifically allege fraudulent claims for federal funds and not merely address concerns about general misconduct"); *Bouknight v. Hous. Indep. Sch. Dist.*, Civ. A. No. H-06-1057, 2008 WL 110427, at *4 (S.D. Tex. Jan. 8, 2008) (nothing that "a plaintiff must have specifically investigated or complained about the employer making false claims for federal funds, and the employe[e] must show that the employer knew of the investigation or complaint").  However, at least one district court concluded that an employee had engaged in a protected activity even when she did not specifically contest a claim for government funds because she "asked about the legality of [the defendant's] off-label-marketing practices after she and others were told that the federal government viewed such practices as fraud against the government."  *George*, 864 F. Supp. 2d at 607.

Thus, if an employee's complaints do not have "any suggestion that [he] was attempting to expose illegality or fraud within the meaning of the FCA," they do "not rise to the level of protected activity."  *Patton*, 418 F. App'x at 372.  In other words, "an employee's actions must be aimed at matters that reasonably could lead to a viable claim under the [FCA]."  *George*, 864 F. Supp. 2d at 605 (collecting cases).

Here, the Court finds that the plaintiff does not meet this standard.  The plaintiff contends that he was "complaining that the data in Texas Tech's IPEDS database was materially false," Dkt. No. 40 ¶ 38, and that such conduct is protected under the FCA "because proper IPEDS data was required by the [f]ederal government for Texas Tech to seek and obtain Title IV money," *id.* ¶ 14.  More specifically, Valcik asserts that he informed Sloan that the university's IPEDS data was incorrect and that Valcik corrected it.  *See id.*

¶¶ 17–21.  In turn, Sloan was embarrassed by the discrepancy and did not want the data corrected because the incorrect IPEDS data could potentially inflate the university's academic ranking.  *See id*.  With respect to Hennington, the plaintiff contends that he informed Hennington orally and in emails that data related to professors' educational credentials was incorrect.  *Id.* ¶ 24.  However, Hennington "ignored these known errors" because the false data made the University "more prestigious."  *Id.*  Hennington also reported Valcik's "determination to not allow this false data to remain in the federal databases to Sloan."  *Id.* ¶ 25.  So, Valcik's own accounts of his reports to Sloan and Hennington confirm that he reported the incorrect data itself, but did not report any concern that the IPEDS data was being used to defraud the government.

Other portions of the plaintiff's complaint reference fraud, but the factual allegations fall short of alleging that he reported to his employer any concern of defrauding the government.  The plaintiff contends that "discovery will show that emails" between he and Sloan "will indicate that [he] informed Sloan and the cabinet that without the fixes the data would be non-complaint and would result in false federal filings."  *Id.* ¶ 23.  Elsewhere, the plaintiff asserts that he was "was trying . . . to stop future requests for federal funds based on false data."  *Id.* ¶ 14.  And in his retaliation claim against Sloan and Hennington, Valcik alleges that he "opposed [the university's] [f]ederal funding fraud," but states his "protected conduct" was "reporting false data in the data systems used for federal reports and fixing this data despite opposition to doing so."  *Id.* at 24 (¶ 55).[6]  Although the plaintiff includes references to federal funding fraud, non-compliance, and false federal filings, these

---

[6] Because the plaintiff misnumbers the complaint's paragraphs beginning on page 23, the Court cites to both the specific page number and paragraph.

– 12 –

allegations are conclusory and fail to allege that Valcik reported concerns to Sloan or Hennington that the defendants were defrauding the government by using incorrect IPEDS data to falsely obtain Title IV federal funding. *See Patton*, 418 F. App'x at 372–73 (concluding allegations that the plaintiff confronted his supervisor about "false claims construction mistakes" were conclusory and insufficient to state an FCA retaliation claim).

Critical here, despite Valcik's allegations that he believed the IPEDS data must be accurate to receive Title IV funding, the plaintiff never alleges that he alerted Sloan or Hennington to this concern. The plaintiff's internal complaints, at the most, allege that Sloan and Hennington intentionally falsified certain IPEDS data to benefit the university's reputation and rankings and pushed back when Valcik corrected the data. Such complaints do not qualify as a protected activity because they are not an attempt to expose fraud on the government or a false claim for federal funds.

In sum, even taking as true that: (1) including false data in the IPEDS reports could, upon discovery by the government, result in fines or a withholding of Title IV federal funds from Texas Tech, and (2) this conduct is tantamount to a false claim for funding, Valcik's failure to relay these concerns to his supervisors is fatal to his FCA retaliation claim. *Cf. George*, 864 F. Supp. 2d at 607 (finding that an employee engaged in a protected activity when she "asked about the legality of" the employer's conduct "after she and others were told that the federal government viewed such practices as fraud against the government"). Moreover, the plaintiff does not provide any authority for his contention that submission of incorrect IPEDS data constitutes fraud on the government or subjects an institution to

liability under the FCA.[7]  *See* Dkt. No. 40 ¶¶ 33–38.  Thus, the Court concludes that Valcik's

internal complaints about this false data do not "concern false or fraudulent claims for

payment submitted to the government" and are not "aimed at matters that reasonably could

lead to a viable claim under the [FCA]."  *George*, 864 F. Supp. 2d at 605.

Because Valcik's attempts to prevent false data in federal filings were not an

"attempt[] to expose illegality or fraud within the meaning of the FCA,"[8] *Patton*, 418 F.

App'x at 372, the Court dismisses the plaintiff's FCA retaliation claim for failure to state a

claim upon which relief may be granted.

### B.      Motion for Leave to Amend

The plaintiff requests leave to again amend his complaint if the Court dismisses the

FCA retaliation claim.  But the plaintiff does not request leave to amend with the specificity

required by the Fifth Circuit and the Local Rules.  Furthermore, he has already

---

[7] The Court is not convinced that such inclusion of false data in an IPEDS report could support an FCA claim.  It is undisputed that universities applying for Title IV funding are required, among a myriad of requirements, to complete IPEDS surveys.  *See*  20 U.S.C. § 1094(a)(17) (requiring an institution to complete all IPEDS surveys "in a timely manner and to the satisfaction of the Secretary" to be eligible for Title IV funding.).  NCES uses these surveys to "provide[] data needed to describe—and analyze trends in—postsecondary education in the United States, in terms of the numbers of students enrolled, staff employed, dollars expended, and degrees earned."  NCES, *What is IPEDS?*, https://perma.cc/3JBL-VVSD.  "Congress, federal agencies, state governments, education providers, professional associations, private businesses, media, students and parents, and others rely on IPEDS data for this basic information on postsecondary institutions."  *Id.*  Nothing in these sources indicates that the substance of a university's IPEDS survey is considered when determining eligibility for Title IV funding or, conversely, that a university's submission of incorrect information in an IPEDS survey is tantamount to filing a false claim for federal funding.

[8] Because the plaintiff failed to state the first element of his claim and the Court denies leave to amend, it need not evaluate the parties' arguments as to the other elements of notice and causation.  However, the plaintiff also fails to sufficiently to state these elements.  Because the Court concludes that the plaintiff failed to report a potential fraud on the government and, thus, failed to engage in a protected activity, he cannot show that he put the employer on notice that he was engaged in an FCA-protected activity or that the employer retaliated for his engagement in such activity.  *See Sealed Appellant I*, 156 F. App'x at 634 (explaining that an employee must show "that [the employer] knew he was engaged in protected activity, and that he was discharged because of it").

– 14 –

unsuccessfully amended this claim twice.  The Court therefore denies the plaintiff leave to amend his third amended complaint.

First, the plaintiff does not propose amendments.  "Although [the Fifth Circuit has] not provided strict guidelines as to what constitutes a sufficient request for leave to amend, it is clear that *some* specificity is required."  *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016) (emphasis in original); *see also Goldstein v. MCI WorldCom*, 340 F.3d 238, 254–55 (5th Cir. 2003) (affirming denial of motion for leave to amend where the request stated only: "[s]hould this Court find that the Complaint is insufficient in any way, however, plaintiffs respectfully request leave to amend").  Additionally, this Court's Local Rules require any party seeking leave to amend to attach a proposed amended complaint to any such request.  Loc. Civ. R. 15.1.  And although a district court should "freely give leave" to amend a complaint "when justice so requires," Fed. R. Civ. P. 15(a)(2), the Court may deny leave to amend if it has a substantial reason, such as a "repeated failure to cure deficiencies."  *Steury*, 625 F.3d at 270.

Moreover, the plaintiff gives no indication of how, if given a third chance, he could amend his FCA claim in a manner that would survive dismissal.  Because the plaintiff makes only a general request to amend if the Court dismisses the FCA claim and fails to provide a proposed amended complaint, the Court denies his request for leave to amend on this basis alone.  In addition, the plaintiff has twice amended his complaint in response to the defendants' motions to dismiss and failed to state a plausible claim.  Accordingly, the Court denies the plaintiff leave to amend the FCA claim.

**4.    Conclusion**

In sum, the Court grants the defendants' motion to dismiss the plaintiff's FCA retaliation claim (Dkt. No. 40).  Even under the more lenient Rule 8 pleading standard, the plaintiff has failed to plead the first element of an FCA retaliation claim—that he engaged in a protected activity within the meaning of the FCA.  The plaintiff has not alleged facts that allow the Court to make the plausible inference that the plaintiff complained about the incorrect IPEDS data to prevent a fraudulent claim to the government.  Additionally, the plaintiff has not requested leave to amend this claim with the specificity required by the Fifth Circuit and the local rules, and the plaintiff has twice failed to amend this claim with success.  Accordingly, the Court denies leave to amend this claim and dismisses it with prejudice.

So ordered on March 17, 2026.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE